PAWLET vs. NORTH HERO.

Where an order of removal of a pauper had been made and the pauper removed, but the time for taking an appeal had not transpired ; it is competent for the overseers of the poor of the two towns, by mutual consent, to abandon the said proceeding, take back said pauper, and thus place all things as if said order had not been made.

This was an order of removal of one Geer, a pauper, from Pawlet to North Hero ; from which order North Hero appealed, and pleaded that the town of North Hero was not the place of legal settlement of said Geer. On the trial before the county court no other evidence of said Geer having settlement in North Hero was given but the following, to wit: In January 1834 said Geer was by an order of two justices removed as a pauper from the town of Williston to the town of North Hero, and there left with the overseer of the poor, together with a duly certified copy of the warrant of removal, but no copy of the order was left as required by the act of 1817. In a few days and before the time for taking an appeal had expired, the overseers of the poor of Williston and North Hero had a meeting, when it was mutually agreed that Williston should take back said Geer, pay his expen-

ses at North Hero, and said order should be abandoned and no further proceeding had thereon or claim made by virtue thereof by either party ; and it was so conducted accordingly.    Upon these facts the county court rendered judgment for the defendant, whereupon the plaintiff filed exceptions and the cause passed to this court.

RUTLAND,
February,
1836

Pawlet
vs.
North Hero.

*Argument for the plaintiff.*—1.  The ˮorder of removal from Williston to North Hero, having been executed by removal, and no appeal taken, the pauper's settlement has become fixed in the latter place.—2 Salk. 481-2.—2 John. R. 105.—2 Salk. 488-9, 492, 527.—*The King* vs. *Hinxworth,* Cald. Contin. 42.—*The King* vs. *Towchester,* note, 2 Strange 1172.—*Paris* vs. *Hiram,* 12 Mass. 262.—*Westminster* vs. *Barnardstown,* 8 Mass. 104.

2.  It is true, that notice must be given; (Bray. 177, *Fairfield* vs. *St. Albans*;) but in this case, it was given by leaving a copy &c.    This notice was all that was necessary to enable the defendants to appeal.    See *Hartland* vs. *Williamstown,* 1 Aik. R. 252.—*Bradford* vs. *Corinth,* 1 Aik. R. 293.

The statute of 1817, requiring an attested copy of the order of removal to be delivered, is merely directory.

The want of such copy cannot render the order void, if a removal have taken place.

The notice was sufficient, and the attested copy could add nothing.—*Barre* vs. *Morristown,* 4 Vt. R. 584.

3.  There is no case known of any order unappealed from being overruled, or declared or considered void, if notice were given and removal made.    And, whatever may be the defects of an order, upon which execution has been done, and notice given, it is conclusive upon every body, so far as it extends, and can be understood ; if no appeal be taken and reversal had.—*Hartland* vs. *Williamstown,* 1 Aik. R. 241 to 252, and the cases cited by Marsh.—*Rex* vs. *Steatford,* 7 Tr. R. 596.—Cald. Contin. 42.

And even on *certiorari,* the court will not set aside such an order, for such cause—appeal is the only remedy.

This court have decided, (*Bradford* vs. *Corinth,* 1 Aik. R. 290,) that where a town appeals within thirty days, next after the order of removal was made, if no copy, attested by the justices, has been delivered, they waive their right to such copy.    Of course, then, the proceeding cannot be *void,* by reason of such copy not having been left.—1 Aik. R. 252.—2 Aik. R. 188.

4.  Neither the statute of 1797 nor that of 1817 requires any

RUTLAND,
February,
1836.

Pawlet
vs.
North Hero.

particular *form* or *manner* of *notice*.  The statutes do not enact that " *notice* shall be given in the one case by leaving a copy of the warrant," and, in the other, " by a copy of the order."   But merely that such copies shall be delivered.   And the court must adjudge *what* amounts to sufficient *notice*.

5.  The proceeding is a judicial one—the order is a judgment of a court ; and though a party cannot be concluded without notice, ·yet the statutes having prescribed no *form* of *notice*, or what shall amount to notice, it is for the court to see that the defendant be not wronged—and surely, in this case, the fact of having the pauper to support, and receiving a copy of the warrant of removal was sufficient notice to have put the defendant in motion.—1 Aik. R. 290, 252.—2 Aik. R. 188.—4 Vt. R. 584.

An order of justices, being a judicial act, is not absolutely void, but voidable only, and continues to be an order till it is avoided.— 2 Salk. 674, *Hull* vs. *Briggs*.

6.  In the case of *Strafford* vs. *Hartland*, 2 Vt. R.  565, the court decided, that an appeal must be taken to the next term after a copy of the order was left, if there be sufficient time, though no removal be made under several months.   Now the act of 1797 is not repealed, and the copy required by that statute must still be · delivered—and, as neither such copy, nor that prescribed by the act of 1817, nor both together, are made sufficient notice, by stat-·ute, it follows from this decision, that either is sufficient notice : And, in fact, the case above cited, decides the copy under the act of 1817, to be sufficient notice to oblige the defendant to appeal ; while the case of *Hartland* vs. *Williamstown*, 1 Aik. R. 252, de-cides the copy under that of 1797 to  be sufficient for the same purpose.—*Bradford* vs. *Corinth*, 1 Aik. R. 293.    ·

Whatever might have been considered of this order, on appeal, it is now to late to call in question its validity—it is now conclusive upon North Hero.—12 Mass. 262.—8 Mass. 104.—7 Tr. R. 596.—3 Vt. R. 370.

It results from the determination in *Strafford* vs. *Hartland*, that either copy is sufficient legal notice.   If a removal were made, and copy left by the officer, ten or twenty days before the next term of the court, could it be doubted that the defendant town would at its peril, be obliged to appeal to such next term, though the justices should not deliver their copy till afterwards ?   Certainly not—for the statute expressly requires the appeal to be so taken ; and in accordance with the statute is the case of *Bradford* vs. *Corinth*, before cited.

RUTLAND,
*February,*
1836.

Pawlet
*vs.*
North Hero.

7. The statute of 1817 is simply remedial. The rule in case of remedial statutes is *so to construe them as to cure the mischief and to advance the remedy, and no farther.* The mischief under the statute of 1797 was, that there was no mode pointed out for giving notice, nor any thing required to be done which would amount to notice, except in cases of actual removal. The remedy to be provided was, to define expressly, the nature and form of notice to be given, in the case of an order of removal, not executed by actual removal, or, to require the performance of some act, which would amount to full and complete notice. The act in question contains the latter provision.

8. This case is not between the original parties, but *inter alia ;* in cases like the present, the difficulties of ascertaining whether the copy under the act of 1817 has been delivered, are numerous—while the fact of that under the act of 1797 having been left, always appears of record.

II. The settlement of the pauper cannot be affected, by the agreement between the overseers of the poor of the town of Williston and North Hero, which was made in this case. It is not in the power of overseers, or of another person, to do away the effect of an order of removal, except in the manner prescribed by law—namely, by appeal, by certiorari, or by calling it in question collaterally, and impeaching its validity, on the ground of its being void, through defect of notice, or want of jurisdiction in the justices.—*Southfield* vs. *Bloomingrove,* 2 John. R. 105.

Selectmen cannot submit to arbitration whether one be a pauper, or not.—*Griswold* vs. *North Stonington,* 5 Conn. R. 367.

Overseers cannot affect a settlement by agreement.—*Barre* vs. *Morristown,* 4 Vt. R. 574.

*Argument for defendant.*—The proceedings on the part of the town of Williston, touching the removal of Geer, from thence to North Hero in Jan. 1834, were never completed and have no binding force.

Notice of the order, according to the requisition of the act of 1817, was never given to the town of North Hero : and until legal notice be given, that town is not bound to take measures to procure the reversal of the order.—Stat. 383, sect. 5.

No attested copy of this order was left with North Hero, and for this defect, the proceeding would have been quashed on appeal.—*Georgia* vs. *St. Albans,* 3 Vt. R. 42.

The justices who make the order, are the only proper authority

RUTLAND,
*February,*
1836.

Pawlet
*vs.*
North Hero.

to attest its accuracy. Hence the copy of the warrant of removal and its recitals and preface, attested by the constable, is not a compliance with the act.—*Strafford* vs. *Hartland,* 2 Vt. R. 568.

If the order of removal from Williston be conclusive on the defendant, it must be as an estoppel, which is never to be favored, or aided by inference. The general principle upon which an order of removal unappealed from, is held to be conclusive is, that it is *res judicata,* a perfect judgment by a court of competent jurisdiction ; and this character of a perfect judgment it acquires, by being duly executed, and by being submitted to by the party against whom it is made.—*King* vs. *Corsham,* 11 East. 387.

Notice, the essential ingredient of the binding force of an order, and an opportunity to contest its validity are wanting to give this order the effect of a perfect judgment. The notice required by law was never given ; it cannot therefore be said that North Hero submitted to the order.

A proceeding deriving all its force from statutory enactment must show the requirement of the statute complied with before it will be treated as perfect. That actual notice cannot be substituted for the notice required by law has repeatedly been decided by this court.—*Barre* vs. *Morristown,* 4 Vt. R. 574.

The conclusiveness of an order of removal as between towns not parties to it, rests upon its conclusive character between the towns that are parties to it. If the order is conclusive between the parties to it from considerations of public policy, that there may be an end to litigation, it is held to be conclusive as to all others. This order as between the towns of Williston and North Hero, was annulled and abandoned, and therefore proves nothing against either of their towns. It was never executed because the parties agreed that it should not be completed but abandoned. Pawlet then cannot set up this imperfect and abandoned proceeding as an estoppel.

If it be conceded that the order was duly executed and perfect still, it was competent for the parties to annul it and for the party in whose favor it was made to abandon it. A judgment of a court of competent jurisdiction is binding, but the party in whose favor it may be rendered may abandon it. Lord Ellenborough in the case of *King* vs. *Diddlebury,* held that the proposition that a parish in whose favor an order of removal was made might abandon it and utterly annul its effect, was too clear to require authority.— *King* vs. *Diddlebury,* 12 East. 359.—3 Stark. Ev. 1330–1.

RUTLAND,
February,
1836.

Pawlet
vs.
North Hero.

The opinion of the court was delivered by

COLLAMER, J.—It is undisputed law that an order of removal, duly executed and submitted to, that is, unappealed from and unreversed, is while in force, as conclusive, and in the same manner as any other judgment of a court of competent jurisdiction. Nor does it become necessary here to decide at what time an appeal in such case must be taken ; whether when the removal takes place, and a copy of the warrant is left before a copy of the order, or only when that shall have been left, as this case expressly finds that the time for appeal had not transpired when the case was adjusted. The question is, was it competent to the overseers to make a settlement, adjustment and abandonment of that suit, as it was then situate ? Can the overseers, who have charge of an order of removal in behalf of a town in whose favor it is made, abandon it on finding it desperate, even by consent of the adversary town ? It will hardly be insisted that this order will be in force as to others and not as between the parties thereto.

That the parties to a legal proceeding may make an end of strife, with safety, by common consent, is surely a principle to be favored ; and should be extended to towns and to pauper causes as well as to all others, unless some very express arbitrary and inflexible rule of law forbid it. But the court are asked, in this case, to go even further, and give to this adjustment the directly contrary effect from its intended one, that is, not only to say the adjustment shall be avoided, but its effect shall be to deprive North Hero of any appeal, and fix the settlement of the pauper upon them. But on what ground is this asked ? It would seem to be this. First, that the overseers had no power to make such adjustment. The proceeding is begun and carried through by the overseers of the poor. It is not only their duty to carry it on to an order, but to take out the warrant, procure it executed, see that a copy of the order is duly served and attend to it if appealed. Having thus the charge of the business they may never procure an order, or may neglect ever to execute it, or give notice thereof, and so permit it to expire. This is a matter in their discretion, and to say that they may abandon it directly by consent, gives them no more power than to do so indirectly or to have the useless expense of having an appeal entered in court and then *nolle prosequi* entered by the overseer, which he might clearly do.

It is however further insisted that such an abandonment ought not to be permitted because the order and its execution being matter of record and the adjustment not, it might mislead other towns

RUTLAND,
February,
1836.

Pawlet
vs.
North Hero.

whose rights might come afterwards in question, in relation to the same pauper. But this might also be said in relation to judgments of courts on many subjects. A defendant recovers in ejectment, and during the same term of the court, while it is open to review, he is entirely convinced this judgment will be reversed on review; he therefore discharges the judgment by release and abandons the land. By our statute a judgment in ejectment is conclusive of title as between the parties. Now it is true some one buying under the defendant might be misled by this judgment, but it will hardly be supposed that it would therefore be holden that the release was void and the judgment in force. The same may be said of many other legal proceedings. It is indeed possible that some degree of inconvenience might arise, but it would be small when compared with the evils arising from forbidding towns, by their overseers, from settling their pauper suits or holding the inconsistent doctrine that an order settled, abandoned and inoperative between the parties, should still be binding on one party when insisted on by others.

In entire concurrence with these principles, and fully sustaining them, is the case *Rex* vs. *Diddlebury*, 12 East. 359.

Judgment affirmed.

*G. W. Harmon for plaintiff.*
*Smalley and Adams for defendant.*